Good morning. May it please the court. Sorry, let me just stop for a second, because I think each side gets 15 minutes. Oh, sorry, you just get 10 of them, though. Sorry, go ahead. May it please the court. Tom Siracusa and Amy Lum, privileged to be before you on behalf of Myrna and Thomas McAuliffe, the plaintiffs in this matter. We would request five minutes for rebuttal, please. And are you dividing time? Sorry, I didn't realize there was the division of time here. Can you just explain how you're dividing the 10 and the 5? 10 for opening and 5 for rebuttal. Okay. We don't usually do it that way, but... Okay, I see what you're saying. A different attorney is going to handle the rebuttal? Yes. Okay, thank you for explaining. Thank you. A condition known as mast bumping caused the main rotor blade on defendant's helicopter to slice through the windscreen. The in-flight breakup caused the helicopter to nosedive to the ground, killing Ryan McAuliffe and two others. I'm going to interrupt just because your time is limited, and we do understand the basic facts of the case. I had some questions about exactly what you're contending was defective and was the cause of the accident. So at times you say that it is the main rotor system's design and that the parts that were replaced, if I understand correctly, are the main motor hub and blades, not the entire main rotor system. Am I correct so far? Pretty correct, Judge Sung. Thank you. And is it your contention that the main rotor hub and blades were defectively designed, or are they just part of a system overall that was defectively designed? I guess I'm trying to figure out exactly what the defect is and what the causal link is to the accident. Yes. We presented evidence via expert report and affidavit that the main rotor hub was defective as well as the main rotor blade. The defect in the main rotor hub was identified as a coning hinge, which allowed excessive teetering of the blade. The hinge is not one of the things that was replaced. It was. The hinge is a part of the main rotor hub that was replaced within a few months of the occurrence. Our experts also implicated the main rotor blades, specifically the mass of the blades, which contributed to the low inertia condition, which caused the mass bumping and the crash in this case. And can you tell me specifically the ER sites for those? Because at least the expert report that I read focused on a system and then had a conclusory statement about the main rotor hub and blades also being dangerous, but without much explanation. I could refer to the summer affidavit, paragraph 12, the hunt affidavit, paragraph 7, and the summer report, paragraph 5. Do you have ER sites? I apologize, Your Honor. I don't have those ER sites. Can you tell me whether what you alleged, what you just said are the defects, whether those were already defects in the original helicopter before the replacement happened? We do not allege that those designs were new. They were replaced parts, and we have specific defects in those replaced components, which distinguishes this case. Number one, which brings this case fully within the plain language of the Garrow-Rowling Provision Exception 2A. And secondly, distinguishes any case cited by the defendants, because there is no, they cite cases that allege just the opposite of what we're alleging. So there's two means of attack here. The defendants allege that we are unable to prove a defect because we're alleging a whole system defect. They even go so far as to say we're alleging that the entire aircraft is defective. Not true. They specifically say in their brief we don't allege any specific defects of the main rotor hub or blade. Again, not true. We've alleged a defect in the main rotor hub specific to the coning hinges. And we, through our experts, reference the main rotor blade mass, as I mentioned before, in terms of the specific problems which lead to mass bumping. So this case is different from the case that defendant relies on. Like Hinkle, for example, where the plaintiffs there allege that the use of a defective fuel pump made the company that remanufactured the engine liable. But not, they didn't have specific evidence that the fuel pump was defective. Our case is different. Your case, though, depends on a statutory interpretation that there doesn't need to have been a change in the replacement part that was the cause of the crash. You want us to just say even if the replacement part was exactly the same, the fact that it was replaced is enough to restart the statute of limitations. And I read the statute kind of as being ambiguous between those two. So it seems like you do require us to think that what the statute means is just a replacement is enough. It doesn't matter if it's different. I think the plain language of the statute is if you replace a component that causes the crash, that restarts the time. I think the interpretations that were done in this case were completely unnecessary and inappropriate. There was no reason to go beyond the plain language of the statute. We have components, which we have evidence were defective and unreasonably dangerous that caused the crash. That's the statute. Is there any distinction between component and part? No. Part is used in the statute. Component is used. Subassembly. All those terms are used as part of the statute. The second reason where we believe the district court erred was- Sorry, I'm looking- I'd like to just go back to Judge Sung's first question about what the evidence is. So I think I found Hunt Paragraph 7. It says the R44 rotor hub includes coning hinges that allow each blade to flap independently. Excessive flapping can then allow a blade or blades to diverge from its normal plane of rotation, which then leads to the mass bumping and an in-flight breakup. That's ER164. That's pretty conclusory. I mean, do you think that that is enough to survive summary judgment, just that one paragraph, basically? Well, that one paragraph is a summary of his opinions. He wrote a very lengthy report which explained the reasons for the excessive teetering and the way that the main rotor hub and blades interact to cause the mass bumping condition. There's a long history of mass bumping on the defendant's helicopters, both the R22 and R44, and it's a well-known phenomenon, and Mr. Hunt explains that extensively in his report. What I referred you to was his main opinion in his affidavit in opposition to summary judgment. The other line that was really not a line that was proffered by the defendants, but the district court found that there needed to be a substantive change in the components in order for GARA to apply. And I want to say quickly, that derived from Caldwell. And Caldwell, as the court knows, was a case involving manuals. And where Caldwell came up with the substantive change was they found that the manual is part of the aircraft, but in order to change the manual, you have to do something. And they use this as a specific example of you can't just change the typeface and have that be considered a change that allows the rolling. We've read Caldwell. So I think the question, though, is why isn't it that is what Caldwell was. It was about a manual. But given that the changed part needs to have been the cause of the crash, why isn't it kind of reasonable to read the structure of this statute as meaning that there needs to have been some change that caused the crash rather than just the part was the same and it caused the crash? Because if you assume that the reason for the rolling provision is to protect the public, it wouldn't make sense to encourage manufacturers to keep replacing defective products. So in order to that. Say that again, what? If you can simply interpret the statute, and again, we don't believe that it should be interpreted that way, but if you would simply interpret the statute to say that the new component has to be somehow altered in design, that would allow manufacturers to just keep. If I understand you correctly, you would be saying if the manufacturer had a defective design but got lucky and it didn't manifest into an accident in 18 years, then they could keep using this defective design. Right. And just keep making generating parts that are defective and using them because it so happened that the defect didn't manifest in the first 18 years. Which would not make sense in relationship to having this rolling provision, which is presumably to protect the public. So you would not want to- The rolling provision, in a way, basically negates the 18 years to a degree. I mean, you have this 18 year period. But if you replace a part, and leaving aside the substantial issue, but if you replace a part, in effect, on the rolling statute, you get another grace period for filing your case. That is correct, and that's the plain language. And so what's the difference? Let me just finish it then. What's the difference? Why do you need the 18 year statute to begin with if any time you get a new part, even if it's the same, you get another extension of the 18 year period? It doesn't really turn the statute of limitations kind of into being a nugatory thing and you've got a forever statute? Cases have explained that by saying that the reason for the 18 year limitation is because when these planes are in service for so long, they go through different people. Different people are doing modifications. There are different owners, and it's hard to keep track. This is not that situation. Robinson did the replacement of the components within months of this occurrence. But you're asking us to interpret the statute for all purposes, so I'm having trouble understanding your answer to Judge McKeown about what this statute means and how it makes sense under your reading. I think the meaning of the statute is clear. If there is a component that's replaced, that restarts the statute of repose. It doesn't restart the clock for the entire plane or helicopter or just that part. For the parts that are deemed defective and caused the occurrence. My understanding of the statute in reading the legislative history is that the purpose of this was to protect, essentially, the plane and helicopter manufacturers as a whole because the frame, much of the plane, lasts longer than 18 years, and they wanted to encourage plane manufacturers. If one part gets replaced, that doesn't restart the 18 years for the entire plane. It only restarts the 18 years for the part that got replaced, but you have to show a causal connection between the replaced part and the accident. Is that also your understanding? Yes. Okay, so then you do have to prove, though, that the replaced parts had either a design defect or a manufacturing defect that is causally linked to the accident. Yes. You can't just say because the part was replaced, a non-replaced part or the system as a whole caused the accident. That's correct, Your Honor, and that's really what the cases at the Fenestra Land say, that you can't simply say that if you replace one part, that that means that other parts which were not causative are allowed, but that's not where we're doing that. I think I read it up to a point exactly where you do, but then we have the causation, the proximate cause of the accident, and just to be clear, you're relying on paragraphs 12 and 7 as encapsulating what you believe is sufficient allegations of cause, right? Yes, the coning hinges and the mass of the blades creating this low inertia condition which leads to mass bumping and is very frequent with the defendant's aircraft. And when you say, I just want to make sure, mass of the blades, is that the, I just want to make sure, is it you're talking about the weight or are you talking about the mass, M-A-S-T? I'm sorry, the mass, the weight, M-A-S-T. Thank you. You're cutting into your colleague's time, so I think if you want to save time for rebuttal, you should probably stop and let's hear from the other side. Yes, we will. We'll submit our knowing misrepresentation, conceal arguments, and the failure to allow the amended complaint on the briefs. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Tim Goetz on behalf of Robinson Helicopter Company. And I'm going to try to cut to the chase, in a sense, with respect to some of the questions the Court was asking and go straight to the rule of rolling or replacement part repose. The McAleves contend that the replacement of the main rotor hub and the main rotor blades in 2019 started a new 18-year repose period. A new rolling repose period under Section 2A.2 starts only as to the new parts replaced and only if a, I'm going to refer to it as GARA, the General Aviation Revitalization Act, which, again, I'll be referring to as GARA, which was signed by President Bill Clinton on August 17th, 1994, more than 31 years ago. So that rolling repose period starts only as the new parts replaced and only if a GARA plaintiff can show causation. Causation is critical. Okay, so let's just start with the first part. The, basically, rotor hub and blades are either parts or components, correct? The rotor hub and blades are parts and components of the main rotor system. The main rotor system consists of other parts as well. I understand, but if they're claiming that those two parts caused the accident, they fall within the first part of Sub 2, correct? Meaning component system subassembly or other part. Do you dispute that? Well, the McAuliffe's experts did not allege that the replacement parts failed or malfunctioned in any way. That's not my question. Right. That's the causation question. Right. I'm just wondering, there's really kind of two parts to the Subpart B. You've got to have a new component system subassembly or part, and then that particular subassembly system part or component needs to have caused the accident. And so you're not disputing that they've alleged the first part of the statute, that there's some part or subassembly, right? They've identified that. Well, what we would allege is that the design did not change. So they really didn't change the design when they changed those particular component parts. Right. The design dates back to the original manufacturer. And so how does that matter under the statute? Well, the replacement of parts does not restart the clock as to the larger system in which the new replacement parts are installed. And again, we're talking about a design here, and it's a design that dates back to the original manufacturer in 2000. You know what? You've lost me. I'm sorry. And the reason, it just seemed to me that the case ultimately boils down to causation. But you're trying to make some distinction, it seems to me, with respect to whether there's a part or system or component at issue. The distinction I'm trying to make, and I'm sorry if I'm not answering your question, but the distinction I'm trying to make is we're talking about a design defect theory in this case. We're not talking about a failure or malfunction of the particular components that were replaced. And for a new rolling repose period to commence under Section 2A.2, the Michaelis were required to show, I think I'm getting to it, the new replacement parts cause the accident. So I think you're using the fact that there needs to be a cause to sort of imply into the first phrase some extra concept. And maybe you're arguing that that is what the statute means. I might actually agree with you, but I think you have to acknowledge that that's what you're doing in response to Judge McKeon, because she's reading the words new system, there was a new system, a subassembly or part. And here there were new parts. They put new blades. So you're saying I want to read into that phrase the new blade has to be different. And that's the answer, I think. And you have to defend that. Yes, exactly. We're saying the new blade has to be different. So now explain why. From the original design? From the original design. From the original design. Because the original design, these blades had the same design as the original blades. And where does it say that, that they need to be different? Well, that's basically what the cases say with respect to the design. And again. Sorry, sorry. So we have a case about a manual, but we might think that that manual case is really not telling us things beyond a manual. So tell us from scratch. Don't use the case about manuals. Tell us from scratch why you think this statute requires you to read in this word that you are answering to Judge McKeon. Well, I think the statute would be, Gara, would be almost meaningless if you could use it to show a design defect doesn't date back to the original manufacturer. I mean, the statute was designed to protect aviation manufacturers from products that have been in the stream of commerce, been in the field for 18 years or more. And in this case, it's a design defect. I think that's the distinguishing factor. It happens that here, the replacement part was actually, happens to have been made by the original manufacturer. But that wouldn't always be true. So let's imagine that the replacement part here was made by someone else. And it was still exactly the same as the old one, but it was made by someone else. So your client was the original manufacturer, say, but not the replacement manufacturer or vice versa. It could be different people. Why should the statute not restart against a different manufacturer? Well, I would allege that if it's a different manufacturer, that potentially it would be somewhat of a different design. Well, no, let's assume that the replacement part manufacturer does the exact same design. Right. But again, I'm going back to the main rotor system has a lot of different parts in it. It has pitch links, swash plates, et cetera. They've said two things, that this accident was caused by the main rotor hub and blades. They don't talk about the main rotor system. They talk about those two parts. So why isn't that covered by the statute, but you still need causation? Again, those two parts are part of a bigger system. Those two parts, replacing those alone would not result in the phenomenon of mass pumping that they're talking about. You see, that's why I'm having trouble, because you might be right that if you replace these two parts, that is not or they have not alleged enough to show that those two parts caused the accident. Correct, correct, because it's part of a larger system. And what they're really alleging is that the defect in design is part of the entire system. It's not just as to the blades. On the facts, I have a question about that.  Because I could understand in some cases a system design defect could not be attributed to a design defect or would not essentially run through all the way down to each component part. But what I think, if I understand plaintiff's causation argument correctly, and this is a matter of what's in the record, but I think what they would be saying is that because from what I read, they're saying the whole main rotor system was designed essentially to be prioritized lightweight over sturdiness. And I'm using my very lay understanding of this. But then that, those choices affected the design of the blades as well as the hinges. And that those, essentially those design decisions affected each of the sub parts of the system. And so that you could say, the experts could say that the blades themselves and the main rotor hub, which were replaced in this case, are in effect also infected by this design defect. And that caused, has a proximate cause link to the accident. Now, there's a question of whether all of that is substantially in the record and whether there's enough to get past summary judgment. But if I understand correctly, that is what they're contending. Is that fair? I think that's fair, if I'm understanding your honor correctly. The McCaliff's experts take issue with the alleged low inertia main rotor system, which I think is what your honor was referring to, which they say makes the helicopter more susceptible to controllability issues. The McCaliff's contend that the alleged design defect always existed. And that the accident would have happened even if. But it is a threshold legal question, right? Of whether. Correct. Under, if the, so let's say there is, just assume for the moment that there is enough evidence in the record about a design defect specific to the parts that were replaced. And enough to create a genuine dispute about whether the parts, the design of the parts that were replaced caused the accident. Your legal response is because that's always been the design that doesn't qualify, right? Under this statute. And what I would like to know is what doing a statutory textual analysis in the way that the Supreme Court has told us to starting with the text and then using all the tools of statutory interpretation available to us. How do we get from the text here to that the design has to have changed for this replacement part to not restart the, for the replacement part to restart the clock. And I'll just cut to the chase. I don't, the text itself I think doesn't get you all the way there. To me it's ambiguous. And then I look to the legislative history. And there's actually quite a fair amount of discussion about this exact issue. And I'll just give you one example where it says I have Phil Boyer, the President of the Aircraft Owners and Pilots Association, testifying that the bill will ensure that customers will have a redress for defective components by providing that, and at this time the bill said, 15-year clock begins to run anew on each individual part whenever it is replaced or installed. So the airframe manufacturer of an older aircraft would be protected by the statute of repose. And so would the manufacturer of those very few parts or components which happen to last 15 years or longer. But our members will continue to have a remedy in cases where a more recently installed part proves defective. And again, we would argue that, you know, if you're going all the way back, and in this case the McHale's contend the alleged design defect always existed, and the accident would have happened even if those replacement parts weren't replaced. We agree. So in that sense, it would render the statute basically meaningless if there was not somehow something wrong with those replacement parts that wasn't wrong at the time of the original manufacturers. The McHale's experts' opinions are that the helicopter was defective in design, which defeats causation as to the replacement parts. Because if they're defective in design, again, that defeats causation, and it goes back to the original manufacturer. No, no, no. The blade, if the blade had a defect from the way it was designed, then the blade could still be the cause of the accident. But you are saying there's an additional requirement that that design defect needs to be new. So what in the statute or the legislative history or the structure, what leads you to tell us that the problem that causes the crash has to be new? Well, again, we feel it's absolutely critical that the McHale's experts have not alleged that the hub or blades themselves failed or malfunctioned. Well, that's a different – okay, you might be saying they don't actually have evidence or they don't actually have evidence that there was a design defect in the blade because you don't think their experts said enough. That's a different argument, though, than the statute tells us there needs to be something new about the design. Well, and again, replacing the hub and the blades is not the entire system, and they're talking about the entire system. Okay, so this is saying that the experts have not testified about the right thing. The experts haven't said the blade had a design defect. Correct. They haven't said the blade had a design defect. Exactly. That's exactly right. That's like a question of the facts, not a question of how the statute needs to be interpreted. So we could talk about that. I mean, they pointed to paragraph 711. I mean, now you're saying those paragraphs just aren't enough. Even assuming that an original design defect would be adequate under the statute, their experts haven't said that there's an original design defect in the blade. Is that what you're saying? There's no change in the blade, and it's insufficient, and it is insufficient. But when you say there isn't a change, you're saying the statute requires there to be a change, and that's back to the statutory interpretation. Where do you get that idea? Well, the McAlef's experts' evidence is insufficient to restart the repose period under Section 2A2 of GERA because the design dates back to the original manufacture, and the McAlef's experts are alleging a design defect, and, again, design dating back to the original manufacture in 2000. So the rerolling or replacement part report simply doesn't apply. Just kind of bring it into the real world. There's design defects, and then there also could be a manufacturing defect in the replacement part.  So I want you to distinguish between those because to have a replacement part, wouldn't that be required to be approved by the FAA? Yes, absolutely. And so it's either going to come from the OEM, from the original manufacturer, or it's going to come from a secondary part supplier, right? Correct. Both of those need to be certified by the FAA. Absolutely. That all needs to be certified by the FAA. And, again, the entire design of the helicopter, everything you do with the helicopter, if there wasn't a change in design, if there was a way to change it to make it better or whatever, it's the principle of under- You know, if you'll let us understand your argument, I think we might make a little more progress. And that is, you're saying if the claim is that the design was defective, sort of an ab initio at the beginning, then that has an 18-year statute, and you can't just get a new part with the same design to extend the statute. Is that your position? That is our position, Your Honor. Exactly. And so, instead, if I didn't have, if I had the same part with the design, but my claim was now either the secondary parts manufacturer or the original equipment manufacturer didn't manufacture it correctly, then I could recover under Part 2, right? Yes. And what other situations, in your view, would permit someone to recover under Part 2, leaving aside causation? Well, you're bringing up an interesting one, because we would allege that, you know, this would only apply to the OEM, the original equipment manufacturer. You were talking about potentially a second manufacturer coming in, getting something certified. I mean, there are such subtle differences in certification and everything. They would have to get, they can do it under what's called the PMA, Parts Manufacturing Authority. And if they go through all of that and get that certified by the FAA, I would not necessarily support that, because I would argue that that, it has the potential for a change in design, that it's not going to be identical. But in this case, we are talking about the original equipment manufacturer, and I think that is a distinction that needs to be made. Okay. I think you're over your time, so let's hear from the other side, sir. If I may just finish, Your Honor. Your Honor, Robinson just respectfully requests that the court affirm the grant of Gara's summary judgment as to the Califf's stale claims against Robinson. Sorry, we understand your argument. And I thank you, Your Honors, for your indulgence. And certainly if there are any other questions, I would love to be able to answer them. Thank you so much.  Let's put the five minutes on the clock for the other side, please. Good morning, Your Honors. May it please the Court, Amy Lum on behalf of Plaintiffs Appellant. I just wanted to touch on a couple of things. It seems like you guys have a good handle, I think, on what the main issues are. I'm trying to focus in on what the answer is to that. I'm a little confused, honestly, after hearing Mr. Goetz, because on one hand they're briefing advocates for a position that's different from what the district court decided, which was a substantive alteration or change in the design or the part. And we're here to know. Exactly. So instead he was saying, oh, because we only replaced part of the main rotor system, it does not apply to the whole helicopter, it doesn't apply to the whole system. But what they're advocating for basically is an unwarranted expansion of Gara in saying that there needs to be a change, because there is no precedent other than Caldwell, which we argue is distinguishable because it dealt with the flight manual, which was a really different thing than a part, a tangible physical part that's replaced. But Your Honors have recognized this, that this is sort of requiring an expansion of the statutory language to find some kind of defect as a necessary prerequisite to actually availing ourselves of the rolling change. So if you don't do that, is there any statute limitations? Because if you have 18 years, okay, we're done with 18 years. But now, any time that the aircraft gets a new part or a system, a replacement in effect, the statute runs again, even if it relates to the original design defect. Is that your position? I think there's an important point to be made with respect to that. The 18 years is very protective, just because of aging and what might happen in that time, so that there's a cutoff for manufacturers. But the important part, and as you can kind of see in the case file that's been cited to you, it rarely happens. Actually, the rolling provision isn't invoked often because one part is replaced, but it's not necessarily the causative factor of the accident. Or it's a part of a bigger system, and maybe there's a different manufacturer or something. So it's not freely given. I wouldn't say it's by allowing a situation like ours, which is so directly on point, for what the rolling provision is supposed to protect, which is we have something we've alleged is defective, main rotor system. A key component of that is the main rotor hub and the blades. I do have a few citations. I don't think you've answered my question. There's really, as long as it comes from the original equipment manufacturer, and it just replaces a part that is arguably defective, there is no statute of limitations, right? It would restart it. I mean, it would restart it, but it keeps an 18. You could roll into infinity. You could. But I do think it was designed that way. I think Congress was intentional in doing it to have this sort of safeguard in the event that we have a situation like this, where the Robinson serialized part was replaced within just under five months of the accident. And so it's a new part. It's not like an 18-year-old part, which the statute was designed to protect. But given that it's – sorry, why don't you go ahead. Sure. I was going to say, so you have both a legal challenge and a factual challenge, right? So on the law, you have to prove to us that or reason that the statute called well shouldn't be extended past the unusual facts of a manual.  And essentially that the unpublished decision of Leahy was wrongly extending called well. So that's your legal challenge, right?  And I think your main argument is plain text of the statute just doesn't support extension here and that this is actually what Congress intended. Correct. And then the – on the facts, though, let's say – let's assume for the moment we agree with you on the law. Okay. You would have – you agree you have to prove that the replaced part or parts, in this case two, one or both, is the cause of the accident. Correct. Yes. Right, specifically. Would you agree that – so now, if I understand correctly, there's – I am honestly somewhat confused in reading your briefs on the causation issue. Because at times I see you arguing that it was a design defect in the main rotor system of which the replaced parts are components that caused the accident. And at times I hear you arguing it was, in fact, the replaced parts that caused the accident. And I hear defendants saying if it's, A, a design flaw in the system, they still lose even if they're right on the law because the replaced parts in and of themselves did not cause the accident. There was no design defect or manufacturing defect in, essentially, the hub or the blades. Do you have evidence in the summary judgment record sufficient to withstand summary judgment, to get you to trial about the – a design defect specific to the hub or the blades? We do, Your Honors. So I do have some record sites for you that I hope are helpful. ER 117 is Donald Sommer's report. And let's see. I'm sorry. I think, actually, that might be the portion of his declaration that was read. I would look for it because I read some conclusory statements. What I'm looking for is beyond the bare assertion. I have that as well. Okay. So the report itself, the underlying reasoning, starts at ER 125 and finishes on 133. We would like to point out some of the diagrams within that section we think will be helpful, particularly on 128, 129, and 130, in which you will sort of see how key the hub and blades are to the system. Like, they are the main pieces of the system. And I think the illustrations might help because it's a technical sort of thing to explain through words. And then the additional records that were helpful for Mr. Hunt's affidavit, I think you found that already on – one of you found that already on 164. But the report itself, summary of his opinion is 183. And then the underlying rationale and support can be found on 191 to 202. Okay. Thank you. I just – I have one other question of – so there's the legal question. If we were to agree with you on the law, then arguably the district court's evaluation of the causation evidence was not correct. We could either – we have the option to either review the record ourselves or remand for reconsideration of the evidence on the factual issues. Do you think one or the other would make sense? I think what's challenging, and I'd have to think about that for a second, is a lot of the arguments that Mr. Goetz has brought up today are factual issues that really wouldn't be susceptible to a granting of summary judgment in the way it happened. And so it's turned – I think there is a legal part of it, which it seems like everyone's semi-in agreement on, except perhaps Robinson, because they want to inject the additional requirement of the design defect. But now there are additional factual disputes that perhaps didn't exist because they didn't raise a lot of these factual issues. The law, it was – well, you're barred. It's, you know, you didn't replace proper things 18 years, and because – But ultimately the district court looked at the record and said not enough is alleged, right? She said not enough is alleged because there was no substantive alteration, which of course we disagree with. And so she looked at the record through that lens, and so it's really a threshold issue that completely changes how you might view the facts. Okay, thank you.  Thank you both sides. This case is submitted, and we are adjourned for the day. Thank you, Your Honors. Thank you. All rise.  This court for this session stands adjourned.
judges: McKEOWN, FRIEDLAND, SUNG